The next case on our calendar is Marvin Odoms v. Greenpoint Mortgage Funding, Inc. Ms. Odoms, you have five minutes. You've set aside one minute for rebuttal. We'll hear from you now. Yes, may it please the court. You have to speak up. Oh, I'm sorry. May it please the court. Can you hear me now? May it please the court that Marvin Odoms, I'm appearing pro se, and I want to, I will like the court to consider that in Hale v. Hinkle that a pro se litigant's arguments and briefs are not to be considered as stringently as, you know, educated bar attorneys. We do have a body of law that tells us to treat pro se filings with a great deal of care, which we always do. Which we will do. And I forgot to say that we received your most recent filing, a motion, styled as a motion for summary judgment. Right. Okay. Thank you. Now. It looks like you're frozen. You know, I, excuse me. Is that, okay. Internet connection unstable. Okay. Now, this is a, this is in reference to the dismissal for a cause of action, which is, I would consider especially harsh given this is a particular waiting for this decision to come through. It took them such an extended period of time to come up with such a arbitrary and I would consider an ambiguous decision that doesn't really consider all the facts of this particular case. So, and Aguilera v. United Nations will consider granting a, not to grant a plaintiff's motion to prevail, not based on whether they would prevail or not, but whether the opposing party would be able to prevent evidence. And my evidence is extensive. It basically, what's going on here is I sent the plaintiffs a, I mean, the defendants a notice of fraud, which is attached to the pleading, which was considered basically a third party interlopers have come into the state court and facilitated an illegal foreclosure without any standing, without any, without being parties of interest. And to my knowledge, without even being known to the defendants, you have to consider that this Greenpoint funding during the process prior to the filing was taken over by Capital One and shuttered by Capital One in 2007. Meanwhile, in 2009, a group of third party interlopers have come in and moved a foreclosure through the state court. The original note in the name of Greenpoint funding was for $140,000. They were able to move it through the court for, and achieving a sale and a foreclosure and sale in an amount of $750,000. Now- The first sale was $400,000, I think. Okay. Well, first sale of $350,000 or what have you. Now the point is I presented these facts to the defendants. Defendants have an obligation to, as officials of a national banking institution with oaths of office, to protect the public, me being one, and to honor the laws of the United States, the National Banking Act being another. Now- Mr. Odoms, your time has expired. You do have a minute on rebuttal. And I want to assure you that we've read the file and read all your pleadings. Mr. Farley, representing Greenpoint, I guess. Yes, Your Honor. Clement Farley from McCarter & English on behalf of all of the defendants. May it please the court- I have a question, Mr. Farley. At the first sale, did Mr. Odoms receive any of the excess value over the amount owed on his mortgage? I apologize for the phone. Your Honor, as far as I know, calling through the district court, the state court opinions and the state appellate court opinions, the foreclosure process was followed to the letter. I am not 100% sure that if there was an excess, and we don't know if there was an excess, but if there was an excess- He owed $140,000 and it was sold for like $440,000. Who got that extra money? It's very possible that there were other liens on the property. I think the special referee appointed by the state court has to follow statutory regulations and who gets what money. I don't know whether it's appropriate to guess whether Mr. Odoms did or didn't get the money or wasn't entitled to the money. The state court gave Mr. Odoms a full hearing on every aspect of his defenses and claims. The foreclosing plaintiff satisfied his prima facie case. It was a judgment and a sale order entered. There were numerous appeals and the appellate division found that everything happened according to the way the foreclosure is happening. There's nothing in the plea whatsoever, nothing in the notice of fraud, nothing in any of the state court, nothing in the Eastern District complaint that raises any issue whatsoever at any time concerning his inability to get any monies that he might be entitled to from a surplusage from a foreclosure sale. That effectively is relitigating the entire state court proceedings, which I respectfully submit the doctrines of race judicata and Rooker-Feldman. They bar and in the case of Rooker-Feldman, they prohibit. The district court, I believe, lacks subject matter jurisdiction to go into a state court proceeding and see whether the state court went ahead and did it the right way. He had a full and fair litigation. There were numerous appeals that there were four or five written opinions. This never came up at all. So, in some sense, your honor, respectfully, it's almost as if it's a red herring. This could have been dealt with in any way, shape and form within the New York proceeding, whether it's a request for a new trial or pursuant to CPLR 5015, looking to vacate a sheriff and say, there's a surplus. All of the senior lien holders and junior lien holders and tax liens and water liens and judgment creditors have been paid. There's a surplusage due to me. Other than that, I really can't answer that. And that's sort of picking apart at a very small piece of what went on in a state foreclosure that went on. It was protracted for numerous years and wondering whether the state court got it right. And that's just something res judicata doesn't permit. And the Rooker-Feldman doctrine deprives federal courts of subject matter jurisdiction. So I hope that at least indirectly answers your honor's question. Well, well, it does. But I'm interested. I will ask Mr. Odoms when he takes the podium again, whether he got any of the money from the sale. But I thank you for your appearance, counsel. Mr. Odoms, you reserved one minute for rebuttal. Did you get any money when the house was sold? No, I did not get any money when the house was sold. Do you know, as counsel suggested, if there were other liens on the property? That is, other people who were owed money on this property? There were no other liens on the property, no. As far as you knew. Right, right. Right. Only thing that I was aware of was maybe like a water bill for a couple thousand dollars or something like that, to that effect. You litigated in the foreclosure action, didn't you? Yes, I did. You were a party. Yes, I was. Do you recall how much you owed as of the foreclosure proceedings? It was $140,000, the loan, the original loan. It was, that pretty much was it. I mean, it was. Had you paid anything on the, how far in arrears were you? I was about 10 months. 10 months in arrears. Yeah. So that added to money that was owing. Well, Mr. Odoms, what Mr. Farley said is very important to us. That once this has been litigated in the state courts, the federal courts where you are now have limited jurisdiction to look at what they did. That's because we have the two different court systems and two different sovereigns. And we don't necessarily have a right to relitigate. You don't have a right to relitigate. The federal courts, what has already been decided in the state courts. Okay. Well, my intention was really to raise additional issues that makes what happened in the state court, you know, mute. This is what my attempts are being here. I mean, it doesn't really apply to void judgments. And what my expression is that what went on in the state court is a void judgment, you know. We have your argument then. And we have your papers, including your most recent filing. And we will take this case on consideration. All right. And that will conclude our calendar. Thank you both for appearing. Thank you. All right. Thank you, Mr. Farrell. Thank you, Mr. Odom. All right. Bye.